**United States District Court**
**Eastern District of Michigan**
**Southern Division**

United States of America,

vs.

Case No. 2:26-cr-20709

Hon. Stephen J. Murphy III

James Nelson Holloway,

Defendant.
____________________________/

# Government's Response to Holloway's Motion to Revoke Detention Order (ECF No. 120)

James Holloway, a person with schizophrenia, is in federal custody for threatening to murder a judicial officer of this Court after the judge authorized search warrants for areas under Holloway's control. Holloway has a long history of resisting or evading police, committing violence and making threats to commit violence, including at a federal medical center where he was receiving treatment. Holloway does not believe he needs medication and has said he would stop taking medication upon leaving the medical facility.

The magistrate judge presiding over Holloway's detention hearing did not err in concluding that Holloway was not a suitable candidate for

pretrial release. The Court should deny Holloway's motion to revoke his detention order.

## I. Facts

### A. Holloway's criminal history

Holloway's first interaction with the criminal-justice system occurred at age 16, in 2007, when Fraser police arrested him for misdemeanor retail fraud. 10/25/2024 Bail report, p. 3. Two years later, in August 2009, he committed and later pleaded guilty to attempt to obstruct a public officer and served 45 days in jail. *Id.* at 4. In October 2009, Holloway pleaded guilty to fleeing and eluding a police officer. *Id.* The court diverted the plea under the Holmes Youthful Trainee Act, see Mich. Comp. Laws § 762.11, and Holloway completed a probationary term. *Id.* In February 2012, a state court diverted Holloway's guilty plea to domestic violence under the same youthful-trainee statute. *Id.* at 5. Two years later, in July 2014, Holloway pleaded guilty to attempted resisting and/or obstructing a police officer, and received a probationary sentence. *Id.* at 5–6.

In July 2019, Holloway returned to his parents' Metropolitan Detroit home irate and not having bathed or groomed himself in weeks.

*Id.* He told his mother that he was supposed to fight people at his karate studio, but they did not show. *Id.* Holloway accused his mother of being part of a group that was out to get him, then kicked her and the family dog and threatened to kill the dog. *Id.* Holloway was ranting about killing people, obtained some duct tape, and went upstairs. *Id.* He threw the duct tape at his brother and said they might need it. *Id.* at 7. Holloway came downstairs with a silver handgun, went out to the porch, and fired. *Id.* at 6. Holloway had stolen the gun from his father. *Id.* at 7. Officers arrested Holloway as he fled in the neighborhood, with a gun still on his person. *Id.* Holloway later pleaded guilty to carrying a concealed weapon, a felony, and the misdemeanors of domestic violence and reckless use of a firearm, and received a sentence of 330 days in jail. *Id.* at 6.

*B. Holloway's living circumstances and mental-health history*

As of two years ago, Holloway reported to the Pretrial Services Agency that he lived in a hotel. *Id.* at 1. He had no contact with his parents since 2019. *Id.* His mother declined to serve as a third-party custodian. *Id.* at 2. Holloway claimed that he owned his own online business, U.S.A. Super Centers Corp. *Id.* The pretrial agency was

unable to locate any online presence for this company. *Id.* Holloway claimed having over 50 jobs in Michigan, including at a restaurant, as a commercial driver, a construction worker, and a sales representative. *Id.* Holloway denied any mental-health history, but his family was concerned with undiagnosed mental illness, noting that schizophrenia was present on both sides of the family. *Id.* at 3. Holloway reported a previous hospitalization for a mental-health evaluation in Warren, where, Holloway alleged, the staff "committed crimes" against him. *Id.*

*C. Instant offense*

In September 2024, Holloway made several online purchases that prompted the FBI to investigate him for violating federal firearms laws. ECF No. 1, PageID.2. Holloway had purchased various gun accessories, including rifle mounts and scopes, a double pistol holster, as well as a tactical vest, a night-vision optic, a knife holster, and knee-elbow pads from an online retailer. *Id.,* PageID.3–4, 6. Holloway's prior conviction for CCW rendered him a felon. *Id.*, PageID.4.

An FBI agent found Holloway and his vehicle in a parking lot in Livonia on September 27. *Id.,* PageID.12. Holloway was holding an item that appeared to be a tactical vest during the interaction. *Id.* When the

agent asked Holloway if he knew it was illegal for felons to possess guns, Holloway responded that "was not the law" and it was "not true" that felons could not possess guns. *Id.*, PageID.13–14. The "supreme law" gave him the right to possess firearms. *Id.*, PageID.14.

On October 1, around 12:15 a.m., a person visited Holloway's parents' house wearing black tactical gear and a facemask, covered the doorbell camera lens with chewing gun and then rang the doorbell, calling out for "Mr. Holloway." *Id.*, PageID.15. The visitor appeared to be wearing items consistent with Holloway's recent purchases, including a GoPro camera, and a gun appeared to be hanging from his side. *Id.*, PageID.16–18. A license-plate reader put Holloway's vehicle in the area of his parents' home contemporaneous with this incident. *Id.*, PageID.19–20.

A little over two weeks later, on October 18, agents executed search warrants for Holloway's person, hotel room, vehicle, and trailer, several of which bore the signature of Magistrate Judge A, a judicial officer of this Court. *Id.*, PageID.20. Agents handed a copy of the warrants to Holloway. *Id.*

In October 2024, Holloway emailed the U.S. Attorney's Office in

Detroit, alleging that Magistrate Judge A had committed treason and that he would "sh[o]ot them in the head[.]" ECF No. 1, PageID.21. Two minutes later that same day, Holloway emailed again, "Yes, I'm going to kill [Magistrate Judge A] in a court of law." *Id.* As a result, the government charged Holloway, via complaint, with interstate communication of a threat under 18 U.S.C. § 875(c) and threatening to murder a federal judge under 18 U.S.C. § 115. ECF No.1, PageID.1.

*C. Competency proceedings in the instant case*

Holloway's speech and behavior during the resulting criminal proceeding and while in custody, along with his history, led a magistrate judge of this Court to conclude—in agreement with the sole expert to testify on the issue—that he was not competent to proceed. ECF No. 47. Holloway went to the Federal Medical Center in Devens, Mass., to restore his competency. On March 20, Holloway, while at FMC Devens, e-mailed the facility's psychology-department inbox, saying, "Go on stupid fuck. Fuck around and find out…Death fucking retard…And I will remove you from the fucking planet in your retaliations and ongoing harm. Then I will prosecute your fucking corpse[,] retard." ECF No. 76, PageID.415.

On March 28, Holloway messaged the same inbox that he would "remove 1-5 of you of the few dozen that come to attack me every 2 weeks to a month." *Id.* Holloway added that every time personnel opened the slot to his room to deliver food and medicine, "I will break your arms and necks every 6 hours[.] Until you transfer me." *Id.*

On March 29, Holloway again e-mailed the facility's psychology inbox, saying, "Do you really think someone who wrote these fucking filings is going to let some belligerent jack[ass] psychologist faggot into their life in mental retardation who doesn't know shit[?] You don't know anything. I'm going to have every single person in any overt act killed for this moron." *Id.*, PageID.414–15.

Because of these threats of direct and immediate physical harm and death, medical staff at FMC Devens concluded Holloway was "at imminent risk for harming others" and that he "met criteria for emergency psychiatric treatment." *Id.*, PageID.415. Personnel thereafter administered various doses of anti-psychotic and anti-anxiety medication. *Id.*

The facility scheduled Holloway for a *Harper* administrative

hearing[1] to determine "if the ongoing use of involuntary psychiatric medication is warranted for Mr. Holloway." *Id.*, PageID.416. The hearing officer, a psychiatrist with the Bureau of Prisons, determined that Holloway's "serious mental illness" caused him to threaten prison staff with "physical harm[]and death[.]" ECF No. 116, PageID.483. "Without treatment, it is more likely than not that inmate Holloway will remain a danger to others and will have to be maintained in a more secure environment." *Id.* Holloway appealed the decision administratively, and a higher administrator within the bureau affirmed the hearing officer's decision. *Id.*, PageID.484. Holloway's behavior also resulted in him spending 51 days in FMC Devens's secure mental housing unit. *Id.*, PageID.493.

In early June, Holloway reported to treating personnel his belief that the prison system was illegally detaining him. *Id.*, PageID.490. Holloway denied having a mental-health diagnosis. *Id.* When the psychological examiner told him about a week later that she did not believe he was competent to proceed, Holloway said she was involved in

---

[1] *See Washington v. Harper,* 494 U.S. 210 (1990), and 28 C.F.R. § 549.46(a)

kidnapping by falsely declaring him incompetent and perpetuating the involuntary administration of psychiatric medicine. *Id.* at 491. During a meeting with treatment personnel on September 1, Holloway believed the magistrate judge should never have found him incompetent. *Id.*, PageID.496. Holloway said he believed the prescription Risperdal the facility was giving him involuntarily interfered with his cognition and his organs. *Id.*, PageID.497.

The Risperdal regimen continued between early April and September 29, 2026. *Id.*, PageID.498. Holloway resumed sending e-mails after exiting the secure housing unit, but there were no more threats of bodily harm. *Id.* The examiner noted that Holloway was "increasingly polite and cooperative[.]" *Id.*, PageID.499. By September 3, the examiner observed that Holloway's thinking was "the most rational, relevant, and coherent I have ever observed it to be." *Id.*, PageID.500. Holloway was following the prison rules. *Id.*, PageID.502. However, he remained "unaware he has ever experienced symptoms of a psychotic disorder." *Id.* The examiner concluded Holloway's schizophrenia was in remission in that his symptoms had receded "such that … this condition is not currently impairing his functioning." *Id.*,

PageID.504–05.

The examiner cautioned, however, that Holloway's "ability to remain competent is dependent on his decision to remain adherent to antipsychotic medication. It is highly likely that if Mr. Holloway stops taking antipsychotic medication, his symptoms will re-emerge and again impair his competency to proceed." *Id.*, PageID.519. Accordingly, since "Mr. Holloway has voiced an intent to discontinue taking antipsychotic medication as soon as he leaves FMC Devens, my opinion regarding Mr. Holloway's competence to proceed in the future is guarded." *Id.*

On October 20, 2026, after a hearing, the presiding magistrate judge entered an order finding that Holloway is competent to stand trial. 10/16/2026 Minute Entry; 10/20/2026 Text-Only Order (declaring defendant competent). The detention hearing having resumed and then completed, the magistrate judge also found that Holloway presented a danger to the public and a risk of flight and that there was no combination of bail conditions that would mitigate that danger and risk. ECF No. 112, PageID.706. The court relied on Holloway's lack of a stable residence and employment, prior attempts to evade law

enforcement, history of alcohol and substance abuse, prior criminal history, and a history of violence or use of weapons. *Id.* A grand jury in this district indicted Holloway for threatening to murder a U.S. judge under 18 U.S.C. § 115(a)(1)(B), six days later. ECF No. 113.

## II. Standard

"A judicial officer shall order the [pretrial] detention" of a defendant if the officer "finds that no condition or combination of conditions will reasonably assure the appearance of the person and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e)(1). The government must establish risk of flight by a preponderance of the evidence. *United States v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004) (citing *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003)).

## III. Argument

All the pertinent 3142(g) factors weigh in favor of detention. Accordingly, the presiding magistrate judge correctly concluded that detention was appropriate.

### A. *The nature and circumstances of the offense weigh in favor of detention.*

Both the nature and the circumstances of Holloway's offense weigh in favor of detention. First, the nature: Congress treats very

seriously the offense of threatening to murder a judge, as it carries a penalty of up to 10 years in prison. 18 U.S.C. § 115(a)(1)(B), (b)(4). The *circumstances* are also very serious. Here, a magistrate judge authorized routine process in a criminal case, after finding probable cause to search areas under Holloway's control. The facts suggested Holloway was carrying a firearm and readying for something approximating war. Holloway retaliated by threatening to ending the judge's life, e-mailing the U.S. Attorney's Office, "I'm going to kill [Magistrate Judge A] in a court of law." ECF No. 1, PageID.22. These factors weigh in favor of detention.

B. *Holloway's history and characteristics weigh in favor of detention.*

Holloway's history includes not just the charged threat, or other threats, but violence. He has twice pleaded guilty to domestic violence. Holloway armed himself with a weapon immediately after carrying out one of those assaults, notably, a pistol he had stolen. He has pleaded guilty on two occasions to resisting law enforcement and to fleeing and eluding. He has threatened to kill a federal judicial officer for simply doing the job of a judge.

Holloway's more-recent threats to kill—occurring within the

controlled environment of a prison—caused staff to detain him within the secure mental housing unit and involuntarily medicate him.

Holloway's behavior only improved upon receiving the medication to which he objected. Now free of the involuntary-medication order, Holloway, who for years has claimed that he has no mental illness, vows to discontinue antipsychotic medication. That reflects a heavy lack of insight into his own circumstances and bodes poorly for the future. These factors weigh in favor of detention.

C. *The weight of the evidence of Holloway's dangerousness and risk of flight weighs in favor of detention.*

Holloway has multiple arrests for violent offenses and has twice pleaded guilty to domestic violence. He has assaulted his mother and threatened to kill the family dog. Holloway has said a "supreme law" allows him to carry firearms. According to Holloway, a judge who authorized a search warrant committed "treason" and deserved death. After the case commenced, the presiding magistrate judge told Holloway it was improper for him to file pro se motions until he attained competency. ECF No. 20, PageID.64. Nevertheless, Holloway continued to file pro se motions. *See* ECF Nos. 21, 29, 30, 50, 55, 53, 61, 62, 71, 101, 104. Holloway also said the individuals involved in his

treatment were involved in a kidnapping. Holloway has demonstrated that he does not recognize the court or law enforcement's authority.

Holloway's schizophrenia, of course, is not without significance. He improved at FMC Devens, no doubt, *but only after his threatening behavior triggered involuntary medication*. Holloway vowed to discontinue the medication and does not believe he is mentally ill, so his "acceptance" at the Team Wellness facility—*see* ECF No. 120, PageID.537—cannot be of much help to him in treating his mental illness. But even if Holloway were to acknowledge his illness and promise to accept medication, his word is not worth much.

In fact, when appealing a prior decision of the magistrate judge to the Sixth Circuit, Holloway claimed his appeal was untimely only because he had been in secure housing and unable to send mail as the notice of appeal became due. ECF No. 99, PageID.611. But records belied that claim. Holloway had sent mail to his attorney and federal officials during the time frame in which a notice of appeal was due. Moreover, Holloway was not in the secure housing unit during that time. *United States v. Holloway*, No. 26-1632, ECF No. 18, pp. 3, 13–16 (6th Cir.).

Candor with the court matters. *See, e.g.*, *United States v. Jackson*, No. 2:21-cr-20610-3, ECF No. 121, PageID.524 (E.D. Mich. Dec. 16, 2021) (Goldsmith, J.) ("If the Court were to release Jackson on bond, the Court would need to have confidence that Jackson's representations to Pretrial Services have been true and that Jackson could be found at the location he provided.")

## IV. Conclusion

The presiding magistrate judge correctly determined that no bail conditions can reasonably assure Holloway's presence in court and adequately mitigate the danger he poses to the community. This Court should deny his motion to revoke the detention order.

Respectfully submitted,

JEROME F. GORGON JR.
UNITED STATES ATTORNEY

/s/ Louis F. Meizlish
Assistant United States Attorney
211 W. Fort St., Suite 2001
Detroit, Mich., 48226
313-226-9745
louis.meizlish@usdoj.gov

Dated: November 23, 2026

## Certificate of Service

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorneys of record.

/s/ Louis F. Meizlish
Assistant United States Attorney
211 W. Fort St., Suite 2001
Detroit. Mich., 48226
313-226-9745
louis.meizlish@usdoj.gov